UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-714-MOC-SCR

| DEBORAH ELLIS, | ) |  |
|---|---|---|
|  | ) |  |
|  | ) | **ORDER** |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| SANOFI-AVENTIS U.S. LLC, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on a Motion for Judgment on the Pleadings, filed by Defendants Sanofi U.S. Services, Inc. and Sanofi-Aventis U.S. LLC, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. No. 23).

I. BACKGROUND

Plaintiff Deborah Ellis's suit is one of thousands pending in In re Taxotere Products Liability Litigation, a multidistrict litigation wherein plaintiffs allege that Taxotere (docetaxel), a chemotherapy treatment, caused them to suffer permanent hair loss.

a. MDL Background

Sanofi manufactures Taxotere, a chemotherapy first approved by the FDA in 1996 to treat various life-threatening cancers, including breast cancer. (Doc. No. 5-4 (Sanofi's Answer to Pls.' Am. Master Compl.) at 275, ¶ 124). Before Plaintiff's case was transferred to this Court, the action was pending in the Eastern District of Louisiana, where thousands of other plaintiffs' cases have been consolidated for pre-trial purposes. (Doc. No. 6 (Transfer Order) at 73). Several hundred of those cases have now been transferred back to their home jurisdictions, including this

1

one.

**b. Plaintiff's Claims**

Plaintiff filed her Short Form Complaint ("SFC") in the Louisiana MDL on October 8, 2018, alleging that Taxotere, which she received during chemotherapy, caused her to develop "disfiguring permanent alopecia." (Doc. No. 1 (SFC) at 4, ¶ 12).[1] Plaintiff alleges she received her first dose of Taxotere on June 22, 2009, and her last dose of Taxotere on October 6, 2009. (Id. at 3, ¶¶ 9–10). As part of her SFC, Plaintiff also adopted the allegations in the MDL Second Amended Master Complaint, which defines "permanent" hair loss as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (Id. at 1; Doc. No. 5-4 (Second Am. Master Compl.) at 377–78, ¶ 181). The Second Amended Master Complaint further alleges that permanent hair loss is so apparent that it has stigmatized MDL plaintiffs (including Plaintiff) and negatively affected their body image, social relationships, and emotional well-being. (Doc. No. 5-4 (Second Am. Master Compl.) at 386–87, ¶¶ 214–20). Plaintiff contends that she developed stigmatizing permanent hair loss by April 6, 2013 (at the latest), but she did not file suit until October 8, 2018. See (Doc. No. 1 (SFC)).

Plaintiff raised the following claims from the Second Amended Master Complaint by her SFC: (1) strict products liability – failure to warn; (2) negligence; (3) negligent

---

[1] The MDL court set deadlines for the filing of master and short form complaints, motions to dismiss, and master answers in the federal MDL. (Doc. No. 6 (Transfer Order) at 74). Plaintiffs filed a Master Complaint, which contained allegations common to all MDL plaintiffs, then filed the now-operative Second Amended Master Complaint. (Id. at 20). Defendant Sanofi filed a Master Answer and Affirmative Defenses. See (Doc. No. 5-4 at 246). Plaintiffs were also required to file short form complaints, which did not trigger any responsive motion practice under the MDL court's Pretrial Order 42. Defendant Sanofi moves for judgment on the pleadings now that Plaintiff's case has been transferred.

Case 3:23-cv-00714-MOC-SCR   Document 27   Filed 08/06/24   Page 2 of 10

misrepresentation; (4) fraudulent misrepresentation; (5) fraudulent concealment; and (6) fraud and deceit. (Doc. No. 1 (SFC) at 4, ¶ 13).

On April 3, 2024, Defendant filed the pending motion for judgment on the pleadings. (Doc. No. 23). Plaintiff filed a response on April 17, 2024, and Defendant filed a Reply on April 24, 2024. (Doc. No. 26). This matter is ripe for disposition.

In response to the motion for judgment on the pleadings, Plaintiff has conceded that North Carolina does not recognize strict liability claims. N.C. GEN. STAT. § 99B-1.1; Burrell v. Bayer Corp., 260 F. Supp. 3d 485, 494 (W.D.N.C. 2017) ("This short statute simply states, 'There shall be no strict liability in tort in product liability actions.'"). Thus, Plaintiff has agreed to withdraw her strict products liability/failure to warn claim (Claim One). See (Doc. No. 25 at 24).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings when it would not delay trial. FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013). Therefore, under Rule 12(c), a claim must be dismissed when a claimant's allegations fail to set forth a set of facts which, if true, would entitle the claimant to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). When considering a motion for judgment on the pleadings, the Court is "obliged to accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiffs." Feminist Majority Found. v. Hurley, 911 F.3d 674, 685 (4th Cir. 2018). "However, the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences,

3

unreasonable conclusions, or arguments." Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385–86 (4th Cir. 2009) (internal citations and quotations omitted).

### III. DISCUSSION

Defendants first contend that Plaintiff's claims are barred by the six-year statute of repose ser forth in N.C. GEN. STAT. § 1-50(a)(6). The Court agrees. Statutes of repose create "a substantive right in those protected to be free from liability after a legislatively determined period of time." First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862, 866 (4th Cir. 1989). Unlike a statute of limitations, a statute of repose serves as "a condition precedent to the action itself[,] whereas a statute of limitation acts as a procedural bar to an action which has already accrued." Nat'l Prop. Invs., VIII v. Shell Oil Co., 950 F. Supp. 710, 713 (E.D.N.C. 1996). Put another way, a statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue[.]" Black v. Littlejohn, 312 N.C. 626, 633 (1985).

North Carolina applies its statute of repose to all "action[s] for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product," no matter the theory. N.C. GEN. STAT. § 1-46.1(1); see also N.C. GEN. STAT. § 1-50(a)(6) (repealed 2009) (same); Cramer v. Ethicon, Inc., No. 1:20-cv-95-MOC-WCM, 2021 WL 243872, at *3 (W.D.N.C. Jan. 25, 2021) (citing Nat'l Prop. Invs., VIII, 950 F. Supp. at 713)); Colony Hill Condo. I Ass'n v. Colony Co., 70 N.C. App. 390, 396 (1984) (reasoning that general language of the statute "indicate[d] that the legislature intended to cover the multiplicity of claims that can arise out of a defective product").

The statute of repose starts to run on the date of the product's "initial purchase for use or consumption." N.C. GEN. STAT. § 1-46.1(1). For actions arising before October 1, 2009, North

4

Carolina law provides that no personal injury claims "based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." N.C. GEN. STAT. § 1-50(a)(6). As of October 1, 2009, the North Carolina legislature repealed N.C. Gen. Stat. § 1-50(a)(6) and enacted a new 12-year statute. N.C. GEN. STAT. § 1-46.1(1). The new statute, however, only applies to "causes of action that accrue on or after" October 1, 2009. See 2009 N.C. Sec. Laws 2009-420 § 3.

Courts applying North Carolina law have consistently held that the six-year statute of repose applies when the product was first delivered before October 1, 2009. See, e.g., Ex. A, Fussell v. Sanofi-Aventis U.S. LLC, No. 1:23-cv-142-MR-WCM, at *7. Here, Plaintiff pleaded that her initial use of Taxotere occurred in June 2009. (Doc. No. 1 (SFC) at 3, ¶ 10). Because the product was first delivered before October 1, 2009, the six-year statute applies. Therefore, Plaintiff had until June 2015 to file her lawsuit. But Plaintiff did not file suit until October 8, 2018—more than three years too late. (Id. at 1). Plaintiff's claims are accordingly barred by the six-year statute of repose.

Plaintiff responds that her claim remains timely under the latent disease exception. The Court disagrees. North Carolina recognizes a limited "latent disease exception" to the statute of repose when the plaintiff alleges a disease that "normally develop[s] over long periods of time after multiple exposures to offending substances which are thought to be causative agents [and] [i]t is impossible to identify any particular exposure as the 'first injury,'" such as "asbestosis, silicosis, and chronic obstructive lung disease." Hyer v. Pittsburgh Corning Corp., 790 F.2d 30, 33 (4th Cir. 1986). As this Court recently explained in Fussell, the exception only "applies where [1] 'the plaintiff's injury is a disease, (2) it is difficult to establish the exact time of injury (when the disease process started)[,] and (3) it is difficult to establish that the disease was caused by the

5

product." Ex. A, No. 1:23-cv-142-MR-WCM, at *8 (citing Fulmore, 581 F. Supp. 3d at 758); Cramer, 2021 WL 243872, at *6. This Court held in Fussell that permanent chemotherapy-induced alopecia ("PCIA") is not covered by the exception. The operative allegations in Fussell are the same as those here, the only difference being the date of Plaintiff's alleged injury. Like the plaintiff in Fussell, Plaintiff alleges that she experienced permanent hair loss six months following her completion of chemotherapy. Moreover, like the plaintiff in Fussell, Plaintiff alleges that she was stigmatized by her permanent hair loss. And as in Fussell, to the extent permanent hair loss qualifies as a "disease," "it is not a latent one" and the statutory exception therefore does not apply. Id. at *9. All of Plaintiff's claims are barred by North Carolina's six-year statute of repose.

The Court further finds that, even if the statute of repose did not bar Plaintiff's claims, her product liability claims are subject to North Carolina's three-year statute of limitations. See N.C. GEN. STAT. § 1-52(5). The common law rule in North Carolina is clear: a cause of action accrues when an injury is sustained "even in ever so small a degree[.]" McCarver v. Blythe, 147 N.C. App. 496, 499 (2001) (quoting Mast v. Sapp, 140 N.C. 533, 540 (1906)). When even a small injury "springs into existence," a person's rights are violated and "the cause of action is complete." Id.

Plaintiff alleges she experienced her injury—permanent hair loss allegedly caused by Taxotere—by April 6, 2010, six months after she completed her chemotherapy treatment in October of the year prior. See (Doc. No. 5-4 (Second Am. Master Compl.) at 377–78, ¶ 181). In ruling on statute-of-limitations motions under multiple states' laws, the MDL court held plaintiffs to their pleadings, reasoning that "on the basis of the allegations in the Second Amended Master Complaint, a plaintiff's hair loss becomes permanent six months after

6

completing chemotherapy." In re Taxotere Prods. Liab. Litig. (Durden), MDL No. 16-2740, 2020 WL 4228375, at *1 (applying Louisiana law) (E.D. La. July 23, 2020)[2]; In re Taxotere Prods. Liab. Litig. (Greer), MDL No. 16-2740, 2021 WL 230243, at *2 (E.D. La. July 23, 2020) (applying Mississippi law and granting Sanofi's motion for judgment on the pleadings) (E.D. La. Jan. 22, 2021). As Defendants note, the MDL and MCL courts, as well as many transfer courts, have addressed motions for summary judgment, for judgment on the pleadings, and to show cause based on the statute of limitations across jurisdictions. The claims of 242 plaintiffs have been dismissed as a result.

The same result is warranted under North Carolina law. Like the plaintiff in Fussell, Plaintiff pleaded that she sustained "permanent" hair loss, defined as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (Doc. No. 1 (SFC) at 1; Doc. No. 5-4 (Second Am. Master Compl.) at 377–78, ¶ 181). By her own pleadings, Plaintiff sustained her injury no later than April 6, 2010, six months after she completed chemotherapy on October 6, 2009. (Doc. No. 1 (SFC) at 4, ¶ 10). Plaintiff had until April 6, 2013, to file her lawsuit under North Carolina's three-year statute of limitations. Because Plaintiff did not file until October 8, 2018, her product liability claims are time-barred.

North Carolina recognizes a limited statutory exception to the accrual rule for certain latent injuries:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action . . . shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought

---

[2] The Fifth Circuit Court of Appeals affirmed Durden, holding that "[a]s a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth." In re Taxotere (Docetaxel) Prods. Liab. Litig. ("Durden"), 860 F. App'x 886, 891–92 (5th Cir. 2021).

7

reasonably to have become apparent to the claimant, whichever event first occurs. N.C. GEN. STAT. § 1-52(16). This narrow exception, known as the "discovery rule," applies "in the case of latent damage only[.]" McCarver v. Blythe, 147 N.C. App. 496, 499 (N.C. Ct. App. 2001); Misenheimer v. Burris, 360 N.C. 620, 622 (2006). Latent injuries falling within the exception are not visible to the naked eye. See Dunn v. Pac. Empl. Ins. Co., 332 N.C. 129, 134 (1992) (cause of action accrued when plaintiff was diagnosed with liver cancer); Wilson v. McLeod Oil Co., Inc., 327 N.C. 491, 511 (1990) (cause of action accrued when testing revealed contamination in well water).

Because Plaintiff has failed to plead a latent injury, the discovery rule does not apply. See Fussell, No. 1:23-cv-142-MR-WCM, at *12; see also Greer, 2021 WL 230243, at **2–3 (on motion for judgment on the pleadings, holding that MDL plaintiff's permanent hair loss was not a latent injury under Mississippi's discovery rule); Maxwell v. Sanofi-Aventis U.S. LLC, No. 2:23-cv-696, 2023 WL 7115575, at **7–8 (N.D. Ala. Oct. 27, 2023) ("The court does not decide whether a latent injury exception to the statute of limitations for products cases exists under Alabama law because Ms. Maxwell's pleaded allegations preclude her from making this argument [that her injury was latent]."). Plaintiff's own allegations (the same as those at issue in Fussell, Greer, and Maxwell) reveal that permanent hair loss is not latent, but instead obvious and even stigmatizing. The limited discovery rule under N.C. GEN. STAT. § 1-52(16) does not toll the statute of limitations on Plaintiff's product liability claims, so they must be dismissed.

Finally, the Court finds that the doctrine of equitable estoppel does not revive Plaintiff's untimely claims. Equitable estoppel applies in such limited circumstances where "the delay in initiating an action has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith." Pembee Mfg. Corp. v. Cape Fear Constr. Co., 69

8

N.C. App. 505, 509 (1984), aff'd, 313 N.C. 488 (1985). Equitable estoppel "arises when a party has been induced by another's acts to believe that certain facts exist, and that party rightfully relies and acts upon that belief to his detriment." Johnson Neurological Clinic, Inc. v. Kirkman, 121 N.C. App. 326, 332 (1996) (internal quotation marks and citation omitted). Equitable estoppel requires not only some form of false representation, but also the defendant's intent that the plaintiff act on the false representation. Compare Nowell v. Great Atl. & Pac. Tea Co., 250 N.C. 575, 579 (1959) (equitable estoppel applied where the plaintiff pleaded facts showing that she relied on direct assurances from the defendants inducing her to delay filing suit), with Stratton v. Royal Bank of Canada, 211 N.C. App. 78, 88 (2011) (equitable estoppel did not apply where plaintiff failed to allege the defendant made false representations or concealed material facts and could not point to any evidence that the defendant "intended for her to rely on any [] misrepresentation or concealment."). Here, Plaintiff has failed to allege any facts supporting a finding that Defendant intentionally made a false representation upon which Plaintiff detrimentally relied. Thus, Defendants are entitled to judgment on the pleadings against Plantiff's untimely product liability claims.

IV. **CONCLUSION**

For the reasons stated herein, the Court will grant Defendants' motion for judgment on the pleadings.[3]

---

[3] In their motion to dismiss, Defendants also argue that Plaintiff failed to plead her claims for fraudulent misrepresentation, fraudulent concealment, and fraud and deceit with the requisite particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Because the Court finds that Plaintiff's action is time-barred, the Court does not reach this additional argument.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) Defendants' Motion for Judgment on the Pleadings, (Doc. No. 23), is **GRANTED**.

Signed: August 6, 2024

Max O. Cogburn Jr.
United States District Judge